UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE RANEE KANE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No.  2:14-cv-2419-CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.　　BACKGROUND

Plaintiff, born March 4, 1960, applied on June 22, 2011 for DIB, alleging disability beginning April 13, 2011. Administrative Transcript ("AT") 40, 194-95. Plaintiff alleged she was unable to work due to multiple spinal disc bulges, back, right knee, and bilateral shoulder pain, arthritis, restless leg syndrome, headaches, tinnitus, and depression. AT 23, 208. In a

1

decision dated May 20, 2013, the ALJ determined that plaintiff was not disabled.[1]  AT 19-30.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since April 13, 2011, the alleged onset date.
>
> 3. The claimant has the following severe impairments: cervical degenerative disc disease with radiculopathy, status-post right knee arthroplasty, and chronic neck and right knee pain.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift/carry 40 pounds occasionally and 25 pounds frequently, sit and stand/walk six hours in an eight-hour day. The claimant could frequently climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, and feel, and had no environmental limitations.
>
> 6. The claimant is capable of performing past relevant work as a general clerk work [sic]. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under disability, as defined in the Social Security Act, from April 13, 2011, through the date of this decision.

AT 21-30.

II.     ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly considered the medical opinions of Dr. Martinez and Dr. Palmer when determining plaintiff's residual functional capacity ("RFC"); (2) failed to provide clear and convincing reasons for finding plaintiff's testimony less than fully credible; and (3) improperly considered the lay witness statements.

III.    LEGAL STANDARDS

When previously granted benefits are terminated by the Commissioner, the burden of proof ordinarily shifts. Rather than resting on a current recipient of disability benefits to prove that he or she is disabled, the burden rests on the Commissioner to prove that the applicant is no longer disabled. "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." Bellamy v. Secretary of Health & Human Serv., 755 F. 2d 1380, 1381 (9th Cir. 1985); see also Saltzman v. Apfel, 125 F. Supp. 2d 1014 (C.D. Cal. 2000) (same). This evidence then is reviewed under the substantial evidence standard. Saltzman, 125 F. Supp. 2d at 1019 (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983)).

////

Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV. ANALYSIS

    A.    The ALJ Properly Considered the Medical Opinions in the Record When Determining Plaintiff's RFC

First, plaintiff argues that the ALJ improperly gave reduced weight to the opinion of Dr. Martinez, one of plaintiff's treating physicians. Plaintiff also contends that the ALJ erred by not adopting the mental limitations opined by Dr. Palmer, an examining psychiatrist, despite according "great weight" to Dr. Palmer's opinion.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

/////

4

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

        1.     Dr. Martinez

Dr. Martinez was plaintiff's treating physician from May 4, 2011 to February 7, 2013. On February 28, 2013, Dr. Martinez completed a medical opinion form regarding plaintiff's functional capacity to perform physical work-related tasks. AT 545. Therein, Dr. Martinez determined that plaintiff suffered from a "severe neck condition which is not amenable to surgical correction" and that "conservative treatment" such as steroid injections had "not been helpful." Id. With regard to work-related functions, he opined that plaintiff could frequently and occasionally lift and carry less than ten pounds, stand and walk less than two hours in an eight-hour workday, and sit for about two hours in an eight-hour workday. Id. He further opined that plaintiff would need to lie down hourly, have an opportunity to shift between sitting, standing, and walking positions at will, and take twenty-minute breaks every hour. Id. Finally, he also determined that plaintiff could not work a full-time workday or workweek while only taking the legally allowed rest periods and that plaintiff's impairments would cause her to be absent from

work more than three times per month. Id.

The ALJ gave "minimal weight" to Dr. Martinez's opinion because:

> [I]t was not consistent with [plaintiff's] daily activities and [plaintiff's] statement, in which she reported that medication controlled her joint pain for years. Furthermore, Dr. Martinez['s] physical assessment was not consistent with Dr. Ali's CE medical opinions as well as the State Agency (SA) determinations.

AT 29 (citation to the record omitted).

The ALJ's reasoning that Dr. Martinez's opinion was inconsistent with the other opinion evidence in the record, by itself, constituted a specific and legitimate reason for discounting Dr. Martinez's opinion. Specifically, the ALJ determined that Dr. Martinez's functional opinion conflicted with the findings and opinions of Dr. Ali, a consultative examining physician who independently examined plaintiff, and the two non-examining State agency physicians. These opinions constituted substantial evidence in support of the ALJ's determination to assign reduced weight to Dr. Martinez's opinion. For example, Dr. Ali observed during her physical examination of plaintiff that plaintiff was "able to walk in to the exam room without assistance" and "sit comfortably," had a "normal gait," and could "walk on her toes and heels." AT 431. Based on her examination, independent findings, and a review of plaintiff's medical records available at that time, Dr. Ali opined that plaintiff could stand, walk, and sit for up to six hours, lift and carry forty pounds occasionally and twenty-five pounds frequently, and frequently climb, balance, stoop, kneel, crouch, and crawl. AT 432-33. This opinion clearly conflicted with the more severe limitations opined by Dr. Martinez and the ALJ was permitted to rely solely on this conflict in support of his decision to reject Dr. Martinez's opinion provided that it was supported by the objective medical evidence in the record. Andrews, 53 F.3d at 1041. Indeed, the other medical evidence in the record, including Dr. Martinez's own treatment notes, generally bolstered the ALJ's decision to assign greater weight to Dr. Ali's opinion over Dr. Martinez's opinion because it better supported Dr. Ali's less restrictive functional findings. See, e.g., AT 393, 490-98, 511-12, 530.

/////

/////

Furthermore, the ALJ also relied in part on the opinions of the non-examining State agency physicians in determining that Dr. Martinez's opinion conflicted with the other medical evidence. While the ALJ could not reject Dr. Martinez's opinion based solely on the non-examining opinions, he was permitted to refer to them, along with other objective medical evidence, in support of his determination that the functional limitations opined by Dr. Martinez were not consistent with the other medical evidence. Lester, 81 F.3d at 831 (holding that while "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician," it may be used by the ALJ to support his RFC determination when the opinion reflects other objective medical evidence in the record). Both non-examining physicians' opinions contained physical limitations less severe than those opined by Dr. Martinez and were generally supported by the other objective medical evidence in the record. See AT 88-99, 101-12. Accordingly, the ALJ also properly drew on these opinions to support his conclusion that Dr. Martinez's opined limitations were overly-severe in light of the other medical evidence in the record.

Plaintiff argues that the ALJ could not properly give greater weight to Dr. Ali's opinion because the fact that both she and Dr. Martinez diagnosed plaintiff with cervical radiculopathy and shoulder pain secondary to arthritis means that both physicians relied on "essentially the same" clinical findings to arrive at contrary functional opinions. ECF No. 14 at 27. Plaintiff contends that the Ninth Circuit Court of Appeals' precedent precluded the ALJ from relying on Dr. Ali's contrary opinion over Dr. Martinez's opinion in such an instance. Id. (citing Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) (holding that an examining physician's contrary opinion cannot constitute substantial evidence to discount a treating physician's opinion where both physicians rely on the same clinical findings, but differ only in their conclusions)). However, plaintiff's argument lacks merit because Dr. Ali performed an independent examination that resulted in different clinical findings than those observed by Dr. Martinez. The mere fact that both physicians diagnosed plaintiff with the same impairments does not mean that Dr. Ali relied on the same clinical findings as Dr. Martinez in developing her conflicting opinion.

/////

1    The ALJ also determined that plaintiff's statement to Dr. Martinez in December of 2012
2  that her medication had controlled her joint pain for years further undermined Dr. Martinez's
3  opinion that plaintiff was extremely limited in her ability to sit, stand, and walk, and required an
4  option to lie down hourly.  AT 29.  A condition that can be controlled or corrected by medication
5  is not disabling for purposes of determining eligibility for benefits under the Act.  See Warre v.
6  Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health &
7  Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.
8  1983).  Accordingly, it was proper for the ALJ to consider this statement in support of his
9  determination that Dr. Martinez's opinion that plaintiff was physically limited to the point of
10  disability was entitled to lesser weight.
11    Similarly, the ALJ also properly considered the evidence regarding plaintiff's daily
12  activities in support of his determination regarding Dr. Martinez's opinion.  For instance, plaintiff
13  stated, either during the hearing or to her physicians, that "she is independent for basic activities
14  of daily living," was able to perform simple daily household tasks, and exercised by walking
15  multiple times per week for 30 minutes at a time, all of which indicated that plaintiff was less
16  physically limited than opined by Dr. Martinez.  See AT 49, 430, 437.  While some of the
17  evidence regarding plaintiff's daily living activities indicated that she may have been somewhat
18  more limited, there still existed substantial evidence upon which the ALJ could base his
19  determination that plaintiff's daily activities conflicted with Dr. Martinez's opinion that plaintiff
20  had extreme physical functional limitations.
21    In sum, the ALJ provided specific and legitimate reasons for assigning reduced weight to
22  Dr. Martinez's opinion.  Accordingly, plaintiff's argument that the ALJ erred in assessing his
23  opinion is without merit.
24             2.    Dr. Palmer
25    On September 29, 2011, Dr. Palmer performed a comprehensive psychiatric evaluation of
26  plaintiff.  AT 435-39.  During this examination, Dr. Palmer observed that plaintiff exhibited
27  "fair" to "good" attention, concentration, memory, judgment, insight, and ability to perform
28  calculations.  AT 438.  He also observed largely normal results with regard to plaintiff's thought

process and content, but determined that plaintiff was depressed. Id. Based on his observations, Dr. Palmer diagnosed plaintiff with a "moderate," recurrent major depressive disorder and determined that plaintiff had a Global Functioning Assessment ("GAF") score of 55.[2] Id. With regard to plaintiff's mental functional capacity, Dr. Palmer opined that plaintiff had a "fair" ability to accept instructions from supervisors, interact with coworkers and the public, handle normal work-related stress, maintain regular workplace attendance, and complete a normal workday or workweek without interruptions from her psychiatric condition. AT 439. Dr. Palmer also opined that plaintiff could adequately perform both simple and complex tasks and could perform work activities on a consistent basis. Id. Finally, Dr. Palmer opined that plaintiff's psychiatric condition "may be chronic in nature," would likely last more than one year at the opined level of severity, and that plaintiff's "prognosis is fair." Id. The ALJ gave "great weight" to Dr. Palmer's opinion. AT 29.

Plaintiff contends because the ALJ gave Dr. Palmer's opinion "great weight," he erred by not adopting any of Dr. Palmer's particular findings without an explanation. However, the ALJ was not required to adopt all of the limitations opined by Dr. Palmer solely because he gave Dr. Palmer's opinion "great weight" and generally found it persuasive as a whole. See 20 C.F.R. § 404.1527(e)(2) ("Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law . . . [and] are not bound by any findings made by State agency medical or psychological consultants."); Wilkinson v. Comm'r Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) (unpublished) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight. On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner."); Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) ("The determination of a claimant's RFC and the

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

application of vocational factors are reserved to the ALJ, who is not bound by medical opinion on these subjects."). Furthermore, the ALJ relied on multiple sources in addition to Dr. Palmer's opinion in reaching his RFC conclusion regarding the impact of plaintiff's mental impairments. Specifically, he also accorded great weight to the opinions of the state agency reviewing physicians who opined that plaintiff's mental impairments were not severe. AT 29, 93, 108. The ALJ further determined that the lack of (1) any opinions from treating psychologists or psychiatrists, (2) objective evidence that plaintiff underwent any treatment for her mental impairments, and (3) evidence that plaintiff received any emergency psychiatric care indicated that plaintiff did not have mental impairments that caused functional limitations. This evidence, in conjunction with Dr. Palmer's opinion, substantially supported the ALJ's RFC determination with regard to the impact of plaintiff's mental impairments.

Moreover, even assuming, without deciding, that the ALJ somehow erred in not incorporating the mental limitations opined by Dr. Palmer, any such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). Dr. Palmer opined that plaintiff had, at worst, a "fair" ability to perform a number of workplace activities and determined that plaintiff had a GAF score of 55, both indicating that plaintiff's mental impairments caused only moderate functional limitations. AT 438-39. The Ninth Circuit Court of Appeals has held that moderate mental limitations are not sufficiently severe so as to require vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (involving an assessment that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.").

/////
/////
/////

B.      The ALJ Properly Assessed the Credibility of Plaintiff's Testimony

Next, plaintiff argues that the ALJ erred in assessing the credibility of plaintiff's testimony because he determined that it was only partially credible without providing clear and convincing reasons for doing so.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the

Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's testimony to be only "partially credible" because plaintiff's testimony regarding her daily activities appeared to conflict with the claimed extent of her limitations and the alleged extent of her impairments was not supported by the objective medical evidence in the record.

First, the ALJ determined that plaintiff's daily living activities indicated that plaintiff's limitations were less extreme than what plaintiff expressed through her testimony. Plaintiff contends that this reasoning was erroneous because her testimony regarding her daily living activities actually supported her claim regarding the extent of her limitations rather than undermined them. However, substantial evidence from the record supported the ALJ's determination.

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ highlighted plaintiff's reports to her physicians that "she is independent for basic activities of daily living" and could perform daily household tasks such as washing dishes, making her bed, preparing her own meals, and tending to her personal needs. AT 430, 437. The ALJ also pointed to plaintiff's testimony during the hearing that she exercises by taking 30

1  minute walks multiple times per week.  AT 49.

2  While plaintiff correctly points out that the record also contains some contrary evidence,
3  such as plaintiff's statements that she had to perform certain household tasks slowly over a long
4  period of time and did not do certain other household chores, suggesting that plaintiff's activities
5  are more limited, AT 46, 48 430, it is the function of the ALJ to resolve any ambiguities, and the
6  court finds the ALJ's assessment to be reasonable and supported by substantial evidence.  See
7  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility
8  determination even where the claimant's testimony was somewhat equivocal about how regularly
9  she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not
10 be the only reasonable one").  The ALJ weighed the contrary evidence against the substantial
11 evidence he cited to in support of his adverse credibility determination and reasonably resolved
12 the inconsistencies.  Accordingly, the ALJ did not err in citing plaintiff's daily living activities in
13 support of his adverse credibility determination.

14 With regard to the ALJ's second reason for discounting plaintiff's testimony, plaintiff
15 argues that the medical records, when viewed as a whole, actually corroborated plaintiff's
16 testimony regarding the extent of her pain and functional limitations.  However, contrary to
17 plaintiff's contention, substantial evidence supported the ALJ's determination that the medical
18 evidence demonstrated that plaintiff's pain and limitations were less severe than she alleged.  For
19 instance, Dr. Ali opined that plaintiff was functionally capable of standing and walking for up to
20 six hours in an eight-hour day, and could lift and carry forty pounds occasionally and twenty-five
21 pounds frequently.  AT 432-33.  Furthermore, plaintiff's other physicians' observations regarding
22 her physical impairments showed that they were well controlled and even improving with
23 medicine and other treatment.  E.g., AT 328, 490, 511, 530.  With regard to plaintiff's mental
24 impairments, Dr. Palmer determined that plaintiff was, at most, only moderately impacted.  AT
25 438-39.  Outside of Dr. Martinez's opinion, which the ALJ properly discounted for the reasons
26 discussed above, the medical record generally demonstrates that plaintiff's functional limitations
27 were less severe than what she claimed through her testimony.  Although lack of medical
28 evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is

1  nevertheless a relevant factor for the ALJ to consider. Burch v. Barnhart, 400 F.3d 676, 681 (9th

2  Cir. 2005). Here, the ALJ provided other clear and convincing reasons for discounting plaintiff's

3  testimony. Therefore, he did not err in also providing this reason in support of his determination

4  that plaintiff's testimony was less than credible.

    C.      The ALJ Properly Considered the Lay Witness' Statements

6  Finally, plaintiff argues that the ALJ improperly failed to consider and provide sufficient

7  reasons to reject the third-party lay witness statements submitted in support of plaintiff's

8  application.

9  "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

10 ability to work is competent evidence, and therefore cannot be disregarded without comment."

11 Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,

12 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's

13 symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to

14 discount the testimony of the lay witnesses, he must give reasons that are germane to each

15 witness." Dodrill, 12 F.3d at 919. Nevertheless, the ALJ is not required "to discuss every

16 witness's testimony on a individualized, witness-by-witness basis." Molina v. Astrue, 674 F.3d

17 1104, 1114 (9th Cir. 2012). Indeed, while the applicable regulations require "the ALJ to consider

18 testimony from family and friends submitted on behalf of the claimant," they "do not require the

19 ALJ to provide express reasons for rejecting testimony from each lay witness." Id. (citing 20

20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)). "Rather, if the ALJ gives germane reasons for

21 rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting

22 similar testimony by a different witness." Molina, 674 at 1114.

23 When the ALJ provides clear and convincing reasons for discounting a claimant's

24 testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the

25 ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for

26 rejecting the third-party lay witness's testimony. Valentine v. Comm'r Soc. Sec. Admin., 574

27 F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114. Furthermore, even when the ALJ

28 errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is

harmless if that layperson's testimony largely reflects the limitations described by the claimant and the ALJ provides clear and convincing reasons for discounting the claimant's testimony, because the layperson's testimony in such a circumstance is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122 (quotation marks omitted).

Here, plaintiff argues that the ALJ failed to provide what weight he accorded to each of the third party statements in the record. However, the ALJ individually discussed the third-party reports provided by plaintiff's husband, son, friend, former coworkers, and former employer and accorded them "minimal weight" because they were "not consistent with [plaintiff's] daily living activities, Dr. Ali's CE medical opinions, and the SA determinations." AT 23-24, 30. While the ALJ's reasons for discounting these lay opinions were generally applied to all opinions without an individualized discussion as to each witness's statement, this approach was still without error. See Molina, 674 F.3d at 1114 (stating that the ALJ is not required "to discuss every witness's testimony on a individualized, witness-by-witness basis"). Furthermore, the ALJ's reasons for discounting the lay witness statements were largely the same as the ALJ's reasons for finding plaintiff's testimony not credible. As discussed above, the ALJ found that plaintiff's testimony regarding the extent of her limitations was not supported by the objective medical evidence in the record. Because all of the third-party witness's statements reveal complaints regarding the extent of plaintiff's limitations that are largely similar to those expressed by plaintiff, such a justification is equally applicable to each of the third-party witness's statements. Accordingly, the ALJ also gave "germane" reasons for discounting the third-party statement evidence. See id.; Valentine, 574 F.3d at 694.

Moreover, even had the ALJ erred by failing to provide any reasons for disregarding the lay witness testimony, this error would have been harmless because all of the lay witness statements in the record largely echo plaintiff's own testimony regarding the impact of her impairments and extent of her limitations and, as discussed above, the ALJ properly discounted plaintiff's testimony on these topics. See Molina, 674 F.3d at 1122 (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)) ("[A]n ALJ's failure to comment upon lay witness testimony

is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'").

## V. CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  September 9, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 Kane.ss